*1:45 pm*

JMR/2022R00946

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 26-**345 (RMB)** |
| v. | : | **FILED** |
| ROBERT CORMIER | : | 18 U.S.C. § 656  **JUL 0 8 2026** |
| | | 18 U.S.C. § 1344 |
| | | 18 U.S.C. § 1957  AT 8:30_____M |
| | | 26 U.S.C. § 7201  CLERK, U.S. DISTRICT COURT - DNJ |
| | | 26 U.S.C. § 7202 |

## INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting at Camden, charges:

## COUNT ONE
### [18 U.S.C. § 656 – Embezzlement by Bank Agent]

The Defendant and Other Entities or Organizations

1.      At all times relevant to this Indictment:

a.      Defendant ROBERT CORMIER was a resident of Barrington, New Jersey, and was the owner and Chief Operating Officer of Erigere Rapidus Solutions, Inc. ("ERS").

b.      Richard Eisler, who is charged elsewhere, was a resident of Clementon, New Jersey.  Starting in 2018, Eisler worked for ERS as a part-time security guard.  In early 2020, Eisler became Deputy Director of ERS and had access to ERS's vault.

c.      ERS was a security business located in Westville, New Jersey.  As part of ERS's business, it had an agreement with a community bank, Bank 1, to

1

collect, deliver, transport, and count currency on behalf of certain customers of Bank 1, including business customers and check cashing agencies. This agreement was documented in a written "Transit Security Services Consulting & Service Agreement." As part of its agreement with Bank 1, ERS stored Bank 1's currency, including cash, in ERS's vault. ERS also packaged the currency and made deposits of the currency at the Federal Reserve Bank in Philadelphia, Pennsylvania, on behalf of Bank 1. In this capacity, and pursuant to the agreement between ERS and Bank 1, ERS and its employees were agents of Bank 1.

> d.    Bank 1 and Bank 2 were each a "financial institution" within the meaning of Title 18, United States Code, Section 20, engaged in interstate commerce and insured by the Federal Deposit Insurance Corporation.

2.    Starting in late 2019, and pursuant to the agreement between ERS and Bank 1, ERS collected, counted, transported, stored, and deposited cash for Bank 1. ERS's employees were responsible for picking up cash from various Bank 1 customers, counting the cash at ERS's office, and providing accurate daily reports of the cash to Bank 1. These reports were supposed to reflect accurately the cash that ERS had collected on behalf of Bank 1. Bank 1 relied on the reports from ERS to appropriately credit the relevant customers' accounts for the cash that had been collected by ERS on behalf of Bank 1.

3.    After picking up the cash from Bank 1's customers, ERS stored the cash in a vault at ERS's office in New Jersey, until it could be deposited in the Federal Reserve Bank on behalf of Bank 1. ERS, including defendant ROBERT CORMIER,

2

was required to provide Bank 1 with accurate information about the daily balance of cash in ERS's vault, including the details of Bank 1's cash transactions coming in and out of ERS, the denominations of each of the transactions, and the ending balance of Bank 1's cash that was being stored by ERS.

4. ERS regularly packaged the cash that was stored in its vault, on behalf of Bank 1, in bank bands and then transported that cash to the Federal Reserve Bank in Philadelphia, Pennsylvania for deposit on behalf of Bank 1.

5. As the owner and Chief Operating Officer of ERS, defendant ROBERT CORMIER was an agent of Bank 1 and responsible for providing accurate information to Bank 1 about the amount of cash contained in ERS's vault, on behalf of Bank 1, as well as the dates and times for the deposits of Bank 1's funds at the Federal Reserve Bank in Philadelphia.

6. From in or about March 2019 through in or about September 2022, ERS collected, counted, stored, transported, and deposited millions of dollars in cash for Bank 1. On a daily basis, ERS stored cash in its vault, on behalf of Bank 1, in varying amounts ranging from $1 to $12 million.

7. Beginning in or about 2020 and continuing until sometime in 2022, defendant ROBERT CORMIER took various amounts of cash out of ERS's vault, which cash belonged to Bank 1, without authorization by Bank 1. Defendant CORMIER embezzled and stole at least approximately $3,947,711.

8. Defendant ROBERT CORMIER used the embezzled funds to:

a. Pay cash payroll for employees at ERS.

3

b.      Pay invoices for the installation and monitoring of security systems at various businesses.

c.      Pay for the installation of security systems in the ERS Offices and vehicles.

d.      Pay for ERS company vehicles.

e.      Deposit, and caused to be deposited, cash into ERS's bank accounts at Bank 2.

f.      Pay personal expenses for himself and his family members, including, among other things, the installation of a deck and a pool, and household renovations.

9.      From in or about January 2020 to in or about September 2022, in Camden County, in the District of New Jersey and elsewhere, the defendant,

ROBERT CORMIER,

being an agent of and connected to Bank 1, the deposits of which were and are insured by the Federal Deposit Insurance Corporation, with intent to injure and defraud Bank 1, embezzled, abstracted, purloined, and willfully misapplied more than $1,000 of the moneys, funds, and credits of Bank 1, and the moneys, funds, and assets that were intrusted to the custody and care of the defendant and Bank 1.

In violation of Title 18, United States Code, Section 656.

## COUNT TWO
### [18 U.S.C. 1344 – Bank Fraud]

1.    Paragraphs 1 through 8 of Count 1 of the Indictment are incorporated as if set forth in full herein.

### The Scheme to Defraud

2.    From in or about January 2020 through in or around September 2022, in Camden County, in the District of New Jersey and elsewhere, the defendant,

### ROBERT CORMIER,

knowingly and intentionally executed and attempted to execute a scheme and artifice to defraud financial institutions and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice was in substance as set forth below.

### Purpose of the Scheme to Defraud

3.    The purpose of the scheme was for defendant ROBERT CORMIER to unjustly enrich himself and others by obtaining and misusing funds that had been collected by ERS on behalf of Bank 1, and then preventing Bank 1 from detecting his activities by providing false information and representations to Bank 1 regarding how much money ERS had collected and was storing on behalf of Bank 1. Based on ERS's fraudulent information and representations, Bank 1 was deprived of approximately $9,522,219.

### Manner and Means of the Scheme

4.    It was part of the scheme and artifice to defraud that:

a.    In April of 2019, ERS entered into an agreement with Bank 1, pursuant to which ERS was to provide Bank 1 with, among other things, the following services:  cash collection from certain of ERS's customers, cash transportation, cash counting, cash storage, and delivery of cash to the Federal Reserve Bank in Philadelphia, on behalf of Bank 1.

b.    ERS and its employees picked up cash from Bank 1's customers.

c.    ERS and its employees counted the cash and verified the amounts received, including through reports that ERS was required to make to Bank 1, and that Bank 1 depended on so that Bank 1 could appropriately credit its customer accounts.

d.    Defendant ROBERT CORMIER was responsible for preparing, and overseeing the preparation of, ERS's reports to Bank 1 regarding the amount of money that ERS picked up from Bank 1's customers, on behalf of Bank 1.

e.    Defendant ROBERT CORMIER prepared, and caused to be prepared, false and fraudulent documents regarding the amount of money that ERS had picked up from Bank 1's customers, on behalf of Bank 1.

f.    Defendant ROBERT CORMIER and ERS employees sent false and fraudulent documents to Bank 1 regarding the amount of money that ERS had picked up from Bank 1's customers, on behalf of Bank 1.

g.    Defendant ROBERT CORMIER paid ERS employees in cash, which was taken out from ERS's vault, without authorization by Bank 1, and these

6

payments were not reflected in the reports that defendant ROBERT CORMIER and ERS employees sent to Bank 1.

h.    Defendant ROBERT CORMIER deposited, and caused to be deposited, cash that had been taken out from ERS's vault. The cash was deposited into defendant ROBERT CORMIER's own account and ERS's accounts at Bank 2, without authorization by Bank 1, and these deposits were not reflected in the reports that defendant ROBERT CORMIER and ERS employees sent to Bank 1.

i.    Defendant ROBERT CORMIER accused ERS employees of stealing money from the ERS vault and then failed to report the purported theft to Bank 1 or reduce the balances on the ERS reports to reflect the purportedly stolen money.

j.    On or about November 13, 2020, Bank 1 representatives audited the vault at ERS. During the audit, defendant ROBERT CORMIER represented and provided a report to Bank 1 that falsely indicated $1,400,000 was in transit that day to the Federal Reserve Bank.

k.    On or about January 13, 2022, Bank 1 representatives audited the vault at ERS. During the audit, defendant ROBERT CORMIER represented and provided a report to Bank 1 that falsely indicated $3,860,000 was in transit that day to the Federal Reserve Bank.

l.    On or about September 22, 2022, ERS transported $1,070,000 of Bank 1's money to the Federal Reserve Bank in Philadelphia, and ERS deposited that money into Bank 1's account. Thereafter, on or about September 23, 2022, defendant

7

ROBERT CORMIER sent, or caused to be sent, to Bank 1 a report that falsely stated that ERS's vault had contained $8,557,548 of Bank 1's money.

In violation of Title 18, United States Code, Section 1344.

## COUNTS 3 to 5
### [26 U.S.C. § 7201 – Income Tax Evasion]

1.      Paragraphs 1 through 8 of Count 1 of the Indictment are incorporated as if set forth in full herein.

2.      At all times relevant to this Indictment,

a.      the Internal Revenue Service ("IRS") was a constituent agency of the United States Department of Treasury and part of the Executive Branch of the Government responsible for administering and enforcing the tax laws of the United States and collecting taxes owed to the Treasury of the United States, and providing refunds of taxes overpaid.

### Obligations to the Internal Revenue Service

b.      Any individual who was employed in the United States and earned income during a calendar year in excess of a threshold amount, was obligated to file a U.S. Individual Income Tax Return, Form 1040 ("Form 1040") with the IRS for that calendar year.  Generally, individuals were required by law to prepare and file income tax returns with the IRS by April 15 of the year following the year when the income was earned, unless an extension was granted.  If those income tax returns showed that income taxes were due and owing, then the taxpayer was obligated by law to pay that sum of money to the IRS.

c.      Businesses generally were required to withhold certain taxes from their employees' paychecks and pay those taxes over to the IRS.  These federal employment taxes consisted of federal income tax and Federal Insurance

9

Contribution Act taxes ("FICA taxes") which are collectively referred to as "Payroll Taxes."

       i.      Income Taxes: In general, an employer was required to deduct and withhold income tax on the wages that actually or constructively were paid to its employees, and pay over those withholding taxes to the IRS.

       ii.     FICA Taxes: The FICA tax was comprised of two elements: Social Security taxes, which were used to fund retirement and disability benefits, and Medicare taxes, which were used to provide health and medical benefits for the aged and disabled. An employer had to deduct and withhold FICA taxes on the amount of wages that actually or constructively were paid to its employees, and pay over those FICA taxes to the IRS. An employer also was responsible for paying its own FICA taxes based on the wages that the employer paid to its employees. The employee portion of FICA taxes, along with federal withholding taxes, were collectively referred to as "Trust Fund Taxes." Trust Fund Taxes and the employer's matching FICA taxes were collectively referred to as "employment taxes."

       d.     Federal tax laws require employers to file Form 941s, Employers Federal Quarterly Tax Returns ("Form 941"), which employers used to report and pay all Federal payroll taxes. Federal tax law required employers to file Form 941 four times per year, one for each quarter ending March 31st, June 30th, September 30th and December 31st. An employer was required to pay over its payroll taxes to the IRS, in full, by the due date of the Form 941, which was due one month after the conclusion of each quarter.

10

e.      Section 7501 of the Internal Revenue Code provided that whenever any person was required to withhold or collect any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so withheld or collected was to be held in trust on behalf of the United States.

3.      Defendant ROBERT CORMIER filed personal income tax returns with the IRS in 2017 and hired a Certified Public Accountant to prepare corporate income tax returns, *i.e.*, Form 1120s, for tax years 2017 and 2018.

The Offense

4.      For the calendar years 2020 through 2022, defendant ROBERT CORMIER did not report approximately $3,030,899 of income that he earned on his U.S. Individual Income Tax Return, Form 1040.  The unreported income included, among other things, his embezzled funds from Bank 1, his personal expenses paid by ERS, and his W-2 wages.  As a result, there was a tax due and owing of $986,901 to the United States.

5.      For calendar years 2020, 2021 and 2022, defendant ROBERT CORMIER failed to file personal income tax returns, U.S. Individual Income Tax Return, Form 1040, with the IRS.

6.      For the calendar year 2020, defendant ROBERT CORMIER did not report to the IRS his taxable income of approximately $941,660.  As a result, defendant CORMIER had a tax due and owing of $303,938 for tax year 2020.

11

7. For the calendar year 2021, defendant ROBERT CORMIER did not report to the IRS his taxable income of approximately $1,337,073. As a result, defendant CORMIER had a tax due and owing of approximately $450,384.

8. For the calendar year 2022, defendant ROBERT CORMIER did not report to the IRS his taxable income of approximately $752,166. As a result, defendant CORMIER had an additional tax due and owing of $232,579 for tax year 2021.

9. On or about the tax year filing dates set forth below, in Camden County, in the District of New Jersey, and elsewhere, the defendant,

ROBERT CORMIER,

did knowingly and willfully attempt to evade and defeat a substantial part of the income tax due and owing by him to the United States for the calendar years listed below by: (1) failing to make an income tax return on or about April 15, of the years listed below, as required by law, to any proper officer of the IRS; (2) failing to pay to the IRS the income tax due, as listed below; and (3) depositing, and causing to be deposited, into his own bank accounts and ERS's bank accounts, funds that defendant CORMIER had embezzled from ERS, and which defendant CORMIER had used to pay personal expenses; each calendar year constituting a separate count of this Indictment:

| Count | Tax Year | Tax Year Filing Date | Approximate Undeclared Taxable Income | Approximate Tax Due |
|-------|----------|----------------------|----------------------------------------|---------------------|
| 3 | 2020 | April 15, 2021 | $941,660 | $303,938 |
| 4 | 2021 | April 15, 2022 | $1,337,073 | $450,384 |
| 5 | 2022 | April 15, 2023 | $752,166 | $232,579 |

In violation of Title 26, United States Code, Section 7201.

13

## COUNTS 6 to 16
## [Failure to Collect and Pay Over Payroll Taxes – 26 U.S.C. § 7202]

1.    Paragraphs 1 through 8 of Count 1, and paragraphs 2 and 3 of Counts 3 to 5, of the Indictment are realleged and incorporated by reference as if set forth in full herein.

2.    Defendant ROBERT CORMIER was responsible for accurately collecting, accounting for, and paying taxes over to the IRS the Payroll Taxes for employees of the businesses that he owned on a quarterly basis.

3.    During eleven quarters over the three years 2020, 2021 and 2022, defendant ROBERT CORMIER paid wages totaling $1,744,318. Defendant CORMIER failed to withhold, account for, and pay over approximately $266,880 in payroll taxes due and owing to the IRS.

4.    On or about the dates set forth below (the tax quarter ending), in the District of New Jersey and elsewhere, the defendant,

ROBERT CORMIER,

being a person required to collect, truthfully account for, and pay over payroll taxes to the Internal Revenue Service on behalf of ERS, did willfully fail to collect, truthfully account for, and pay over such taxes due and owing to the United States on behalf of employees of ERS for the following quarters, with each calendar quarter constituting a separate count of the Indictment:

| Count | Tax Quarter Ending | Unreported Wages | Taxes Due |
|-------|--------------------|------------------|-----------|
| 6 | June 2020 | $98,799 | $15,116 |
| 7 | September 2020 | $128,635 | $19,681 |
| 8 | December 2020 | $143,580 | $21,967 |
| 9 | March 2021 | $106,660 | $16,318 |

14

| 10 | June 2021 | $146,235 | $22,373 |
| 11 | September 2021 | $236,835 | $36,235 |
| 12 | December 2021 | $182,555 | $27,930 |
| 13 | March 2022 | $193,830 | $29,655 |
| 14 | June 2022 | $179,940 | $27,530 |
| 15 | September 2022 | $161,512 | $24,711 |
| 16 | December 2022 | $165,737 | $25,357 |

In violation of Title 26, United States Code, Section 7202, and Title 18, United States Code, Section 2.

## COUNTS 17 through 27
### [18 U.S.C. § 1957(a) – Money Laundering – Transacting in Criminal Proceeds]

1.      Paragraphs 1 through 8 of Count 1 of the Indictment are incorporated as if set forth in full herein.

2.      On or about the dates listed below, in the District of New Jersey, and elsewhere, the defendant,

### ROBERT CORMIER

did knowingly engage in, and attempt to engage in, and aided and abetted the engaging in, the monetary transactions specified below, by, through, and to a financial institution, in and affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, namely, embezzlement by bank agent, contrary to Title 18, United States Code, Section 656, and bank fraud, contrary to Title 18, United States Code, Section 1344 and Title 18, United States Code, Section 2.

| Count | Date | Amount | Monetary Transaction |
|---|---|---|---|
| 17 | October 25, 2021 | $13,000 | Cash deposit into ERS's Bank 2 account |
| 18 | November 22, 2021 | $43,764 | ERS Bank 2 check 1619, funded by cash deposited into ERS' Bank 2 account, to a business, at the defendant's direction |
| 19 | November 26, 2021 | $20,000 | Cash deposit into ERS's Bank 2 account |
| 20 | December 23, 2021 | $20,664 | ERS Bank 2 check 1629, funded by cash deposited into ERS' Bank 2 account, to a business, at the defendant's direction |
| 21 | December 23, 2021 | $12,037 | Cash deposit into ERS's Bank 2 account |

16

| 22 | January 10, 2022 | $20,000 | Cash deposit into ERS's Bank 2 account |
| 23 | January 17, 2022 | $40,000 | Cash deposit into ERS's Bank 2 account |
| 24 | March 14, 2022 | $23,500 | Cash deposit into ERS's Bank 2 account |
| 25 | May 19, 2022 | $100,000 | Cash deposit into ERS's Bank 2 account |
| 26 | September 14, 2022 | $37,808 | Cash deposit into ERS's Bank 2 account |
| 27 | September 28, 2022 | $13,220 | Cash deposit into ERS's Bank 2 account |

In violation of Title 18, United States Code, Section 1957(a).

## FORFEITURE ALLEGATION AS TO COUNTS 1 and 2

Upon conviction of the offenses in violation of Title 18, United States Code, Sections 656 and 1344, as alleged in Counts 1 and 2 of this Indictment, the defendant ROBERT CORMIER, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2), all property, real or personal, constituting or derived from proceeds traceable to the offense charged in Count 1 of this Indictment.

## FORFEITURE ALLEGATION AS TO COUNT 17 TO 27

Upon conviction of the offenses in violation of Title 18, United States Code, Section 1957 alleged in Counts 17 through 27 of this Indictment, the defendant ROBERT CORMIER, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(c), all property, real or personal, constituting or derived from proceeds traceable to the offense charged in Counts 17 through 27 of this Indictment.

## SUBSTITUTE ASSETS PROVISION
### (Applicable to All Forfeiture Allegations)

If any of the property described above, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred of sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty,

18

the United States shall be entitled, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c), to forfeiture of any other property of the defendants up to the value of the above-described forfeitable property.

A TRUE BILL

_____

FOREPERSON

ROBERT FRAZER
United States Attorney

_____
JASON M. RICHARDSON
Assistant United States Attorney

Approved:

_____
R. DAVID WALK, Jr.
Deputy United States Attorney

19

CASE NUMBER: 26-

# United States District Court
# District of New Jersey

## UNITED STATES OF AMERICA
### v.
## ROBERT CORMIER

## INDICTMENT FOR
18 U.S.C. § 656
18 U.S.C. § 1344
18 U.S.C. § 1957
26 U.S.C. § 7201
26 U.S.C. § 7202

A TRUE BILL,

FOREPERSON

ROBERT FRAZER
UNITED STATES ATTORNEY

JASON M. RICHARDSON
ASSISTANT U.S. ATTORNEY
CAMDEN, NEW JERSEY
(856) 757-5026